FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 15, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CATHERINE S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO: 2:22-CV-235-RMP <br><br> ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Catherine S.[1], ECF No. 11, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 13. Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) of the Commissioner's denial of her claims for Social Security Income ("SSI") under Title XVI, and Disability Insurance Benefits ("DIB") under Title II, of the Social Security Act (the "Act"). *See* ECF No. 11 at 1–2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 1

Having considered the parties' briefs; Plaintiff's reply, ECF No. 14, the administrative record, and the applicable law, the Court is fully informed. For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

*General Context*

Plaintiff applied for SSI and DIB on September 23, 2019, alleging disability onset on May 15, 2019. Administrative Record ("AR")[2] 237, 244. Plaintiff was 35 years old on the alleged disability onset date and asserted that she was unable to work primarily due to a "bad back." AR 271. Plaintiff's claims proceeded to a telephonic hearing before Administrative Law Judge ("ALJ") Mark Kim on April 27, 2021. AR 76–101. Plaintiff was present and represented by non-attorney representative Cheryl Mullins. AR 76–78. The ALJ heard from vocational expert ("VE") Erin Hunt as well as from Plaintiff. AR 80–100. ALJ Kim issued an unfavorable decision on May 13, 2021.

*ALJ's Decision*

Applying the five-step evaluation process, ALJ Kim found:

**Step one:** Plaintiff meets the insured status requirements of the Act through September 30, 2025. AR 18. Plaintiff has not engaged in substantial gainful activity

---

[2] The Administrative Record is filed at ECF No. 9.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 2

1  since May 15, 2019, the alleged onset date.  AR 18 (citing 20 C.F.R. §§ 404.1572 *et seq.* and 416.971 *et seq.*).

**Step two:** Plaintiff has the following severe impairments: lumbar degenerative disc disease; thoracic degenerative disc disease; cervical degenerative disc disease; obesity; major depressive disorder; post-traumatic stress disorder ("PTSD"); and attention deficit hyperactivity disorder ("ADHD").  AR 18–19 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  In addition, the ALJ found that fibromyalgia is not established under Social Security Ruling ("SSR") 12-2p, which articulates criteria for finding that impairment medically determinable under the Act.  The ALJ further memorialized that "[n]evertheless, all of the claimant's symptoms have been considering [sic] in finding the residual functional capacity set forth below."  AR 19.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  AR 19.  In reaching this conclusion, the ALJ considered SSR 19-2 for evaluating obesity and found that the severity of Plaintiff's physical impairments does not meet or medically equal the criteria of listings 1.15 for disorders of the spine resulting in compromise of a nerve root or 11.6 for lumbar spinal stenosis resulting in compromise of the cauda equine.  AR 19.  The ALJ found that Plaintiff's mental

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 3

1  impairments, considered singly and in combination, do not meet or medically equal

2  the criteria for listings 12.04 for depressive, bipolar, and related disorders; 12.11 for

3  neurodevelopmental disorders; or 12.15 for trauma- and stress-related disorders.  AR

4  19.  In considering the listings for mental disorders, the ALJ considered the

5  "paragraph B" criteria and found that Plaintiff is mildly limited in understanding,

6  remembering, or applying information and moderately limited in: interacting with

7  others; concentrating, persisting, or maintaining pace; and adapting or managing

8  oneself.  AR 19–20.  Finding that Plaintiff does not have mental impairments that

9  cause at last two marked limitations, the ALJ concluded that Plaintiff does not

10 satisfy the "paragraph B" criteria.  In addition, the ALJ found that the "paragraph C"

11 criteria are not present in this case.  AR 20.

12      **Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff can

13 perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)

14 except that Plaintiff can stand and/or walk for only thirty minutes at a time.  AR 20–

15 21.  The ALJ further limited Plaintiff's ability to perform sedentary work as follows:

16 > She can never crawl or climb ladders, ropes, or scaffolds; only
> occasionally stoop, kneel, crouch, and climb flights of stairs; and only
17 > occasionally reach overhead bilaterally. She must avoid extreme
> temperatures, excessive vibrations, and unprotected heights. Her work
18 > should be limited to simple, routine tasks with a reasoning level of 3 or
> less with only occasional and simple changes.  In addition, the claimant
19 > is limited to work involving only occasional and superficial interaction
> with the public and coworkers.

20 AR 21.

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 4

In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 22.

**Step four:** The ALJ found that Plaintiff is unable to perform past relevant work as a home attendant without needing to perform work activities requiring activities that exceed the RFC. AR 25–26 (citing 20 C.F.R. §§ 404.1565 and 416.965).

**Step five:** The ALJ found that Plaintiff has at least a high school education and that she was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. AR 26 (citing 20 C.F.R. §§ 404.1563, 404.1564, 416.963, and 416.964). The ALJ found that transferability of job skills is not material to the determination of disability because use of the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. AR 26 (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).

The ALJ further found that during the relevant period, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the following representative occupations: document preparer (sedentary, unskilled work,

1  with around 20,200 jobs nationally); table worker (sedentary, unskilled work with

2  around 20,900 jobs nationally); and taper (sedentary, unskilled work, with around

3  11,900 jobs nationally). AR 26–27. The ALJ concluded that Plaintiff has not been

4  under a disability, as defined by the Act, from May 15, 2019, through the date of the

5  ALJ's decision. AR 27 (citing 20 C.F.R. §§ 404.1520(g) and 416.920 (g)).

6      Through counsel, Christopher H. Dellert, Plaintiff sought review of the ALJ's

7  decision in this Court. ECF No. 1.

## LEGAL STANDARD

### Standard of Review

10      Congress has provided a limited scope of judicial review of the

11  Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the

12  Commissioner's denial of benefits only if the ALJ's determination was based on

13  legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d

14  993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's]

15  determination that a claimant is not disabled will be upheld if the findings of fact are

16  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

17  1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere

18  scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

19  1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

20  1989). Substantial evidence "means such evidence as a reasonable mind might

21  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work

1   which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the

2   definition of disability consists of both medical and vocational components. *Edlund*

3   *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

4   **Sequential Evaluation Process**

5   The Commissioner has established a five-step sequential evaluation process

6   for determining whether a claimant is disabled. 20 C.F.R §§ 416.920, 404.1520.

7   Step one determines if they are engaged in substantial gainful activities. If the

8   claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R.

9   §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

10  If the claimant is not engaged in substantial gainful activities, the decision

11  maker proceeds to step two and determines whether the claimant has a medically

12  severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii),

13  404.1520(a)(4)(ii). If the claimant does not have a severe impairment or

14  combination of impairments, the disability claim is denied.

15  If the impairment is severe, the evaluation proceeds to the third step, which

16  compares the claimant's impairment with listed impairments acknowledged by the

17  Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§

18  416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If

19  the impairment meets or equals one of the listed impairments, the claimant is

20  conclusively presumed to be disabled.

21

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past. If the claimant can perform their previous work, the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ISSUES ON APPEAL

The parties' briefs raise the following issues regarding the ALJ's decision:

1. Did the ALJ erroneously assess Plaintiff's symptoms allegedly resulting from fibromyalgia and chronic pain syndrome?
2. Did the ALJ erroneously assess Plaintiff's subjective symptom statements?

**Fibromyalgia**

Plaintiff argues that the ALJ "asserted that he was taking Plaintiff's fibromyalgia into account and then relied on findings that were irrelevant to that diagnosis to discredit Plaintiff's allegations." ECF No. 14 at 3. Specifically, Plaintiff argues that the ALJ erroneously relied on record findings of normal gait, and only mildly reduced strength, and observations that Plaintiff was able to walk without the need for assistive devices. *Id.* Plaintiff acknowledges that this evidence may be interpreted to undermine her allegations related to her degenerative disc disease, but Plaintiff argues that these findings have no bearing on her allegations of limitations stemming from fibromyalgia or chronic pain syndrome. *Id.*

The Commissioner contends that Plaintiff does not offer any evidence of fibromyalgia that meet either of the diagnostic criteria set forth in SSR 12-2p. ECF No. 13 at 9. Moreover, the Commissioner argues that Plaintiff's contention that "her clinical presentation should be ignored in the face of her diagnosed fibromyalgia" ignores Ninth Circuit authority that an ALJ "may properly discount [statements that constant pain requires a claimant to lie down during the day] if the claimant '[does]

not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual.'" *Id.* at 9–10 (citing *Meanel v. Apfel*, 172, F.3d 1111, 1114 (9th Cir. 1999); *Smith v. Berryhill*, 752 Fed. Appx. 473, 475 (9th Cir. 2019)). The Commissioner argues that the ALJ in this case properly considered the longitudinal record, "appropriately reviewing both inconsistencies in Plaintiff's testimony and her non-compliance with her prescribed medical routine[,]" in determining the extent to which Plaintiff's symptoms, whether from fibromyalgia, a chronic pain syndrome, or another condition, affect her ability to work. *Id*. at 10–11.

The ALJ concluded at step two that fibromyalgia is not a severe impairment because Plaintiff did not establish its severity impairment in accordance with SSR 12-2p. AR 19. ALJ Kim memorialized that he nevertheless considered all of Plaintiff's symptoms in formulating the RFC. AR 19.

SSR 12-2p recognizes that fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues . . . ." SSR 12-2p, *Titles II and XVI: Evaluation of Fibromyalgia*, 2012 SSR LEXIS 1, at *2, 2012 WL 3104869 (July 25, 2012). A claimant may establish that she has fibromyalgia as a medically determinable impairment by satisfying either of two sets of criteria set forth in SSR 12-2p. *Rounds v. Comm'r Soc. Sec. Admin.* 807 F.3d 996, 1005 (9th Cir. 2015). First, Plaintiff may provide evidence showing that she has (1) a history of widespread pain; (2) at least eleven positive tender points on physical examination; and (3) "[e]vidence that other disorders that

could cause the symptoms or signs were excluded." 2012 SSR LEXIS 1, at *2. Alternatively, a claimant may establish that fibromyalgia is a medically determinable impairment by showing that she has (1) a history of widespread pain; (2) "[r]epeated manifestations" of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." 2012 SSR LEXIS 1, at *2.

Plaintiff does not show that the evidence in the record satisfies either of these criteria. Moreover, Plaintiff does not show that the ALJ failed to consider any of the symptoms relating to Plaintiff's alleged fibromyalgia or chronic pain syndrome at later steps in the sequential analysis, even if the ALJ did not refer to chronic pain syndrome by name. Rather, as the Commissioner points out, it is notable that the medical source who found Plaintiff to have fibromyalgia and chronic pain syndrome, and associated symptoms, opined that Plaintiff was capable of less intensive exertional and postural limitations on account of those conditions than ALJ Kim's RFC. *See* ECF No. 13 at 11 (citing AR 120–22, 20–21). Accordingly, the Court finds no error based on the ALJ's application of SSR 12-2p or in the ALJ's assessment of Plaintiff's alleged fibromyalgia and chronic pain syndrome generally.

**Subjective Complaints**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. ECF No. 11 at 7. Plaintiff argues that

ALJ Kim took a February 2021 treatment note out of context when he found that Plaintiff had reported spending time with family and friends with little anxiety, and, therefore, had less difficulty interacting with others than Plaintiff claimed. *Id.* at 8 (citing AR 23, 916, 918, 922, and 924). Plaintiff argues that the evidence that the ALJ ignored indicated that Plaintiff reported staying with a friend around the same time to avoid domestic violence. *Id.* at 9 (adding "[t]hat Plaintiff reported little anxiety when spending time in a more supportive environment was not evidence that she would be able to interact appropriately with co-workers and supervisors in light of other evidence in the record that the ALJ did not address."). Plaintiff asserts that the record supports that Plaintiff "repeatedly had difficulty interacting appropriately with health care providers." *Id.* at 10.

In addition, Plaintiff faults the ALJ for allegedly failing to address Plaintiff's complaint that she cannot sit for extended periods. ECF No. 11 at 10–11. Plaintiff contends that the ALJ's citation to records indicating that weight loss helped to relieve Plaintiff's back pain and Plaintiff displayed a normal gait "were not informative as to Plaintiff's ability to sit for extended periods of time[.]" *Id.* at 11 (citing AR 379, 387, and 392). Plaintiff asserts that the ALJ's error in this respect is harmful because Plaintiff's ability to do sedentary work depends on her ability to sit for much of the day. *Id.* at 12.

The Commissioner responds that the ALJ relied on substantial evidence in finding that the record fails to support the extreme symptoms that Plaintiff alleged,

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 13

including her claims that she could not sit, stand, or walk for extended periods and consequently "spent much of her time lying down." ECF No. 13 at 11 (citing ECF No. 11 at 7; AR 84, 86, and 89). The Commissioner argues that the ALJ's decision reflects that he carefully examined the objective medical evidence and found that it supported more intact physical and mental functioning than Plaintiff alleged. *Id.* at 12–14 (citing AR 20, 22–23). The Commissioner further argues that the ALJ also reasonably relied on Plaintiff's treatment history in discounting her complaints, citing to evidence that Plaintiff "persistently reported positive outcomes from her treatment and that setbacks in her mental health were directly tied to her medication non-compliance." *Id.* at 15 (citing AR 22–23, 379, and 955). The Commissioner also submits that the ALJ cited to records supporting that, although Plaintiff "was not pain-free, she was walking much better and doing well with less pain, only months after her back surgery." *Id.* at 15–16 (citing AR 22–23, 580, 664, and 669). The Commissioner adds that the ALJ was permitted to find "great significance" in Plaintiff's decision to decline physical therapy. *Id.* at 16 (citing AR 23, 670; SSR 16-3p, 2016 WL 1119029). Moreover, the Commissioner defends the ALJ's finding that Plaintiff's activities were inconsistent with the level of physical and mental limitation that she alleged and cites the Court to evidence that Plaintiff was able, after her alleged onset date, to go for "drives," lift her mother while caretaking for her, swim and hike with friends, camp, read and do online research, and socialize. *Id.* at 17–18 (citing AR 22, 273, 342, 394–95, 402, 916–18, and 955).

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 14

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this case. Plaintiff alleges that she became unable to work on May 15, 2019, identified her impairment as a "bad back," and elsewhere asserted that her severe impairments included degenerative disc disease, chronic back pain, fibromyalgia, obesity, hypertension, and post-traumatic stress disorder. AR 271, 328. As summarized by the ALJ:

> The claimant testified at the hearing to back pain due to a history of back surgeries, including as recently as December 2019, and that this causes her to be unable to stand or walk for long periods of time. She also testified to limited ability to lift such that she would be unable to repetitively lift a weight equivalent to that of a gallon of milk, and to trouble with concentration and retaining information due to pain as well as due to mental symptoms, especially those related to PTSD. The claimant also stated that she "pretty much never sit[s] straight up" because this causes a lot of pain, and that she gets stiff with cold weather and does not have a good heat tolerance. In addition, the claimant testified that being around people is difficult for her due to

> both pain and mental symptoms, as she gets "kind of grouchy" and, due to this issue, secludes herself from friends and family. The claimant further testified to limited ability to do various activities of daily living, including household chores, shopping, and attending to personal care tasks like washing her hair. Along these lines, she testified to use of assistive devices such as a walker, including at home, and to difficulty holding her arms overhead during the last couple of months. She also testified to taking fewer showers due to both pain and symptoms of depression. Finally, she testified to lying down more than a dozen times during the day in order to take pressure off her back, trouble sleeping due to both muscle spasms and night terrors caused by her PTSD such that she takes daily naps typically lasting for an hour or two, and that she does not handle changes in routine well.

AR 21.

The ALJ found that the objective medical evidence, Plaintiff's treatment record, and Plaintiff's activities, do not support a more restrictive RFC than the ALJ formulated. AR 21–22.

Plaintiff specifically challenges the ALJ's reliance on a treatment note in which Plaintiff reported being able to socialize with family and friends with more energy and "barely any anxiety" in February 2021 because Plaintiff simultaneously was staying with a friend to avoid intimate partner violence. *See* ECF No. 14 at 4. Plaintiff minimizes the significance of her February 2021 self-report because those reported interactions occurred in a supportive environment that was in contrast with the abusive relationship that Plaintiff was evading. *See id.* However, Plaintiff cites to no authority nor makes any argument undermining the value of this substantial evidence that Plaintiff could interact constructively with friends and family. *See* AR 916. Plaintiff instead cites the Court to records indicating that Plaintiff had

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 16

"difficulty interacting with health care providers, including leave the hospital against medical advice; getting angry with and yelled [sic] at providers; and hanging up on them when being asked basic preoperative questions or not getting her way; demonstrating histrionic behaviors and refusing to follow instructions when hospitalized for a suicide attempt, after having an MRI; and following her lumbar surgery." *Id.* (citing AR 367, 376, 559, 587–88, and 608). This evidence, even if it is in contrast with the February 2021 treatment record cited by the ALJ, does not undermine that Plaintiff reported interacting with friends and family constructively. In addition, in citations collected by the Commissioner, the record demonstrates that Plaintiff interacted in a "cooperative" and "pleasant" manner with health professionals outside of a hospital setting. *See* ECF No. 13 at 20 (citing AR 20, 342, 350, 356, 387, 395–96, 397, 399, 401, 403, 404, 555, 561, 614, 661, 922, 924, and 935, 937, and 944). All of this evidence substantially supports that Plaintiff's behavior while in a hospital setting may not be probative of her general ability to function, particularly when the record indicates that "hospitals and admissions are specific triggers for Plaintiff's PTSD." *See* ECF No. 13 at 20 (citing AR 405, 482). In short, it is the ALJ's, not the Court's, role to weigh conflicting evidence, and the ALJ relied on sufficient evidence to support his conclusions here.

Furthermore, Plaintiff does not dispute that the ALJ cited to records that indicated that, while Plaintiff exhibited some decreased strength, she demonstrated normal gait, full and pain-free hip rotation, negative straight leg raising, and intact

sensation. AR 22, 346, 379, 387, and 392. In considering Plaintiff's mental health symptoms, the ALJ cited to a September 2019 record indicating that Plaintiff demonstrated "grossly intact" memory upon mental examination. AR 20, 373. The ALJ further cited to records indicating that Plaintiff frequently presented with a logical, linear, and well-organized thought process. AR 20, 395, 399, 401, 554, 917, 927, 932, 941. These records undermine Plaintiff's claim that she has poor recollection and difficulty concentrating. *See* AR 21. Moreover, Plaintiff makes no showing that this evidence amounts to cherry-picking or that the record as a whole supports longstanding psychological disability.

        The ALJ further reasoned that Plaintiff's medical record indicated that Plaintiff had been non-compliant with a prescribed medication around August 2019 and that Plaintiff declined physical therapy when it was recommended. AR 22–23, 346, 379, and 670). The Ninth Circuit recognizes that an ALJ may interpret a claimant's decision not to seek further treatment or follow through on recommended treatment such as physical therapy as an indication that a claimant is not in as severe pain as alleged. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Noncompliance with treatment likewise may amount to substantial evidence in support of an ALJ's treatment of a claimant's subjective symptom statements. *Burch*, 400 F.3d at 681.

        The ALJ also relied on Plaintiff's daily activities to find the record inconsistent with the degree of impairment that Plaintiff alleged. Specifically, the

ALJ reasoned that the following activities undermine Plaintiff's subjective symptom complaints: caretaking for her mother, traveling to Texas, hiking, swimming, floating on a river, camping, going on drives, socializing with friends and family, reading, and doing online research. AR 22–24 (citing AR 262–69, 342, 394–95, 402, 916, 918, 926, and 955). An ALJ may consider daily activities in evaluating a claimant's testimony regarding their physical limitations and the severity of their symptoms. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling pain." (emphasis in original)).

The Court concludes that ALJ Kim gave legally sufficient and supported reasons for discounting Plaintiff's subjective symptom testimony. Even if Plaintiff's suggested alternative interpretation of the evidence also is supported, Plaintiff does not establish reversible error. Consequently, the Court grants judgment to the Commissioner, and denies judgment to Plaintiff.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Opening Brief, **ECF No. 11**, is **DENIED**.
2. Defendant the Commissioner's Brief, **ECF No. 13**, is **GRANTED**.
4. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment for Defendant as directed, provide copies to counsel, and **close the file** in this case.

**DATED** December 15, 2023.

> *s/ Rosanna Malouf Peterson*
> ROSANNA MALOUF PETERSON
> Senior United States District Judge